UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 05-cr-10024-DPW |
| | ) | |
| JESSICA BUDD | ) | |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

**I.    Introduction**

Defendant JESSICA BUDD has moved this Honorable Court to suppress statements she made on February 11, 2005 to federal agents after her arrest for the instant charges (hereinafter, "Defendant's Motion"). Though defendant concedes that these statements were made after she had been informed of her Miranda rights and after she had signed a waiver of these rights, defendant nevertheless seeks to suppress these statements, claiming that they violated her Sixth Amendment right to counsel and that they resulted from "coercive police activity."

As both the United States Supreme Court and the First Circuit have made clear, the Sixth Amendment right to counsel is charge specific. Thus, the fact that the defendant was represented by counsel for her state court charges does not mean that that counsel also represented her on the instant federal charges. Because defendant was not represented by an attorney on the federal charges, the federal agents did not violate her Sixth Amendment right to counsel by talking to her in the absence of an attorney.

Defendant's claimed "coercive police activity" is both factually and legally incorrect. The alleged coercive statement, that the agents would "make sure [she] got home" to care for her daughter if the defendant talked to them, does not constitute coercive conduct invalidating her consent to talk. Moreover, if the court deems it necessary to resolve this factual dispute, the government anticipates that the agents will testify that they never made such a promise to

BUDD. In fact, they attempted to assist the defendant in finding someone else to care for her nine-year-old daughter under the assumption that the defendant would not be returning home shortly to care for her daughter herself.

For all these reasons and the reasons discussed below, Defendant's Motion should be denied.

## II.    Factual Background:

The United States expects that the following facts will be established if the Court deems it necessary to hold an evidentiary hearing on this matter:

On or about July 29, 2004, defendant BUDD and her now husband and co-defendant, Charles MARTIN, appeared in the Salem District Court in Salem, Massachusetts to answer charges of receiving stolen property. The Salem District Court case constituted BUDD's fourth arrest. Sometime after BUDD and MARTIN were arraigned, the FBI and the United States Attorney's Office began investigating BUDD and MARTIN's use of interstate mails and wires to commit fraud, specifically, the sale of stolen marine electronics and other stolen items through the website EBay. On February 3, 2005, the United States Grand Jury returned a four count indictment charging BUDD and MARTIN with mail fraud and wire fraud regarding the sale of a specific Furuno Marine Radar system. On February 11, 2005, FBI agents arrested MARTIN and BUDD at the Salem District Court. Shortly after this arrest, BUDD was read her Miranda rights, stated she understood them, and agreed to waive these rights. She signed a written waiver of her Miranda rights and provided a statement to the FBI agents. A copy of that written Miranda waiver is attached as Exhibit 1.

At no time did any of the FBI agents (or anyone else) threaten BUDD or say anything

improper to induce BUDD to cooperate. In fact, at BUDD's request, one of the agents, in her presence, attempted to contact BUDD's mother, so that BUDD's mother would know that BUDD would likely <u>not</u> be home in time to care for BUDD's daughter.

### III.    Argument:

    A.    <u>The Defendant's Sixth Amendment Right to Counsel Had Not Attached to the Federal Charges</u>

BUDD first asserts that, by virtue of her representation on a state court case, she was represented by counsel on the instant case before she confessed to federal agents. This claim is without merit.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Supreme Court has recognized that the Sixth Amendment right to counsel is "offense specific." <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991). As such, the right "cannot be invoked once for all future prosecutions." <u>Id</u>.

Here, the federal agents' interview of BUDD did not violate her right to counsel. Though BUDD was represented by counsel in her state court case, this counsel did not represent her on the federal charges. As a consequence, BUDD could waive this right, as she did by signing a Miranda waiver. <u>See</u>, <u>e.g.</u>, <u>Patterson v. Illinois</u>, 487 U.S. 285 (1988) (finding that the right to counsel attaches at indictment, but that a knowing and intelligent waiver of Miranda rights effectively waived the defendant's Sixth Amendment right to counsel provided that the defendant was not already represented).

In <u>McNeil</u>, 501 U.S. at 175, the Supreme Court held that the Sixth Amendment right to counsel is "offense specific." On this basis, the Court concluded that the police did not violate a

defendant's right to counsel when they questioned him about crimes factually unrelated to his charged offense. Id. at 176. Here, the offense specific nature of the inquiry clearly dictates a determination that BUDD's state court attorney did not represent her for her federal court case. Contrary to defendant's assumption, the state and federal case do not arise from the same act or transaction. Defendant was charged with receiving stolen property in the state court case, but this property did not include the Furuno Marina Radar that she is accused of fraudulently selling in the federal indictment. Though defendants' scheme as charged in the federal indictment may have included her intent to sell some of the same stolen property that the Commonwealth charged her with receiving, the substantive counts of the Indictment related only to the Furuno Marine Radar, which was not charged in the state court case. Thus, the federal case and the state case do not arise from the same "transaction or act" at all.

Even if the state and federal cases are deemed to have arisen from the same transaction or act, defendant's state court counsel did not automatically represent her on the federal charges. In Texas v. Cobb, 532 U.S. 162 (2001), the Supreme Court re-affirmed that the right to counsel is offense specific, even if the offenses arose from the same act or transaction. The defendant in Cobb burglarized his neighbor's home, killed the two occupants, and buried their bodies. Cobb was identified as a suspect and confessed to the burglary but not the murders. Cobb was indicted for the burglary and was appointed counsel. After receiving additional information about the murders, state authorities secured an arrest warrant and took Cobb into custody for the murders. Cobb waived his Miranda rights, confessed to the two murders, and was later convicted of capital murder. Id. at 165-166. The Texas Court of Criminal Appeals reversed, finding that when Cobb's Sixth Amendment right to counsel had attached to the burglary, it had also attached

to the uncharged murders because they were factually related to the burglary. Id. at 166-67. The state sought review in the Supreme Court, and the Court granted certiorari.

On appeal to the Supreme Court, Cobb urged the Court to adopt the Texas appellate court's "factually related" standard regarding the Sixth Amendment right to counsel. Id. at 168-69. The Supreme Court declined to do so. Instead, the Court reaffirmed the "offense specific" test of McNeil. In defining the scope of the term "offense," the Court looked to its Fifth Amendment Double Jeopardy jurisprudence. Id. at 174. The Court noted that in the Double Jeopardy context it had used the test articulated in Blockburger v. United States, 284 U.S. 299 (1932). Under Blockburger, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" Cobb, 532 U.S. at 173 (quoting Blockburger, 284 U.S. at 304). Applying the Blockburger test, the Court held that Cobb's confession was not obtained in violation of his Sixth Amendment right to counsel because the burglary charge and murder charge were separate offenses. Id.

Here, the state charges of receiving stolen property and the federal mail fraud and wire fraud charges are clearly two offenses. For the state court prosecution of receiving stolen property, the Commonwealth must prove that the defendant:

> (1) knew the property was stolen, embezzled, or obtained by fraudulent means; and
> (2) bought, received, or aided in the concealment of the stolen property.

See Massachusetts Jury Instructions-Criminal, Form 9-13, Buying or Receiving Stolen Property (G.L. c. 266 § 60).

By contrast, for the United States to prove that the defendant committed mail fraud, it

must prove that the defendant:

> 1) engaged in a scheme, to defraud or to obtain money or property by means of false or fraudulent pretenses;
> 2) did so knowingly and willfully with the intent to defraud or to obtain money or property by means of false or fraudulent pretenses; and
> 3) used the United States mail or common commercial carrier, in furtherance of this scheme.

See First Circuit Pattern Jury Instructions, Criminal, West, 1998 § 4.12.

For the United States to prove that the defendant committed wire fraud, it must prove that the defendant:

> 1) engaged in a scheme, to defraud or to obtain money or property by means of false or fraudulent pretenses;
> 2) did so knowingly and willfully with the intent to defraud or to obtain money or property by means of false or fraudulent pretenses; and
> 3) used interstate wire communication in furtherance of this scheme.

See First Circuit Pattern Jury Instructions, Criminal, West, 1998 § 4.13.

Defendant asserts that, though none of the elements of the state charge are mirrored in the federal charges, the two sets of charges are nevertheless the same because as a factual matter in this instance the United States must prove that the defendant knew that the goods sold on the Internet were stolen, which, she claims, is the same thing that the state must prove in order to prosecute her for receipt of stolen property. Even assuming that 1) the state charges and the federal charges arise from the same act or transaction and 2) that the Blockberger test looks to this underlying factual level (and not just the elements of the crimes in the abstract), this argument is unavailing. Defendant ignores the second element of the state charge, "that the defendant bought, received, or aided in the concealment of the stolen property." The federal allegation is that the defendant sold this property knowing it was illegal, not that she bought, received or aided in its concealment. Thus, each of the charges requires proof of a fact that the

other does not.

Moreover, even if the Court were to ignore the fact that the state court charges relate to different acts (in that the defendant was not charged with receiving the stolen Furuno Marine Radar at the state level), and also ignores the fact that state and federal charges each include an element not included in the other, BUDD could not claim that her state court attorney also automatically represented her on the federal court case.  In fact, the First Circuit recently ruled on this exact issue in United States v. Coker, 433 F.3d 39 (2005).  The Coker Court held that a defendant who had counsel on a state arson charge did not have a Sixth Amendment right to that counsel with respect to a federal arson case involving the exact same facts, even though the two crimes contained all of the same elements.  Coker specifically rejected the argument put forth by the defendant that the "dual sovereignty" doctrine should not apply in the Sixth Amendment context and rejected by name the logic of United States v. Mills, 412 F.3d 325 (2nd Cir. 2005), the primary case cited by the defendant in support of her motion.

> After carefully examining Cobb, we conclude that the dual sovereignty doctrine applies for the purposes of defining what constitutes the same offense in the Sixth Amendment right to counsel context. In doing so, we reject the reasoning of the Second Circuit in Mills and adopt the reasoning of the Fifth Circuit in Avants.

Coker, 433 F.3d at 44.

The First Circuit also made clear that defendant's assertion that the dual sovereignty doctrine should not apply because the state and federal prosecutions were "inexorably intertwined" is not cognizable.  In order to argue that a state and federal prosecution are "inexorably intertwined," a defendant, "'must produce some evidence tending to prove that . . . one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham.'"  Id. at 46 (quoting United States v. Guzman, 85

F.3d 823, 827 (1st Cir. 1996)). Defendant has not and cannot offer any such evidence in this case.

      B.    <u>The Defendant's Waiver of her Miranda Rights was Voluntary</u>

Defendant also asserts the her Fifth Amendment right against self-incrimination was violated because, though she was given and knowingly waived Miranda rights, she was coerced into making statements because, in her words, the agents told her, "if I cooperated and answered questions, they would make sure I got home [to my daughter]." The government disputes that the agents ever made any such statement to the defendant. If the Court deems it necessary to hold an evidentiary hearing in this matter, the government expects that the agents involved will testify that they never made such a statement to the defendant. Instead, the agents, at BUDD's request, attempted to contact the defendant's mother to ensure that someone would be available to care for the defendant's daughter, precisely because the agents did not know and could not tell the defendant when she might be returning home.

Despite this factual dispute, it is the government's position that the Court does not need to hold an evidentiary hearing to resolve this matter. Simply put, even assuming for the sake of argument that the agents actually made the claimed statement to the defendant prior to her confession, such a statement is not the type of coercive action that would render involuntary the defendant's knowing waiver of her Miranda rights.

The Due Process Clause of the Fifth Amendment protects against compelled confessions by means of a voluntariness test. <u>Dickerson v. United States</u>, 530 U.S. 428, 432-33 (2000). The voluntariness analysis is a totality of the circumstances test, taking into account both the characteristics of the accused and the details of the interrogation. <u>United States v. Jackson</u>, 918

F.2d 236, 241 (1st Cir. 1990). The ultimate issue is whether the will of the defendant was overborne so that the statement was not her free and voluntary act. Id. Among the factors courts commonly consider in assessing the totality of the circumstances surrounding testimonial evidence supplied by a defendant are: (1) the location of the questioning; (2) whether Miranda warnings were given; and (3) whether the accused initiated contact with law enforcement officials. An accused's personal characteristics, such as youth, drug problems, psychological problems, physical condition, and inexperience with the criminal justice system are also factors in this totality test. Georgetown Law Journal, 32nd Ed., 168-171 (2003). The government bears the burden of establishing the voluntariness of a confession by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972); Jackson, 918 F.2d at 241.

Defendant is a person who was familiar with the criminal justice system. The February 2004 federal arrest was her fifth arrest. She was 26 years old at the time of the arrest and apparently did not have any drug abuse problem, psychological issue, or physical handicap. Though defendant makes much of the fact that the interview took place in a "holding cell, cut off from her attorney and her husband," this does not describe a situation different from that of any other person who has been arrested. The only thing that arguably separates the defendant from the overwhelming majority of defendants in her situation is that she alleges that after expressing concern about her nine-year-old daughter, the agents told her that if she cooperated and answered questions they would make sure she got home. This statement, if it occurred, does not constitute coercive police conduct.

Though a confession is excluded if the defendant's consent was not voluntary, the Supreme Court has limited the voluntariness concept by holding that only confessions procured

by "coercive official tactics" should be excluded as involuntary. See Colorado v. Connelly, 479 U.S. 157, 167 (1986). This is a narrow category of extremely offensive police action. Mere trickery does not equal "coercive official tactics":

> But trickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect. While the line between ruse and coercion is sometimes blurred, confessions procured by deceits have been held voluntary in a number of situations.

United States v. Byram, 145 F.3d 405 (1st Cir. 1998) (internal citations omitted). For this reason, the First Circuit has found that even a false assurance that a person would not be prosecuted if he confessed did not render a confession involuntary. "Given the narrowed definition of coercion in Connelly, it would be very hard to treat as *coercion* a false assurance to a suspect that he was not in danger of prosecution." Id. (emphasis in original). Surely an alleged promise to ensure that the defendant would be released after arraignment (which she was) is far less coercive than a (false) promise to refrain from prosecuting a defendant if the defendant confesses.

Defendant's comparison of this case to Lynumn v. Illinois, 372 U.S. 528 (1963) is misplaced. Lynumn dealt with a defendant who was told that if she did not cooperate, she would lose custody of her children. This is entirely different from the statement allegedly made to the defendant. Unlike the defendant in Lynumn, defendant was not threatened at all. She was allegedly told that she would benefit from cooperating in that she would be released pending trial. This on its face is not a threat. Defendant argues that the "implication" is that if she failed to cooperate, she would not be released. But that is reading too much into the statement defendant alleges was said. A promise of leniency does not constitute a threat. Moreover, even if the alleged statement did constitute a threat by "implication," the alleged threat is of an

entirely different order of magnitude from the threat in Lynumn.  Every defendant arrested in the federal system runs some risk that he or she will be held pending trial.  Though for this defendant that would mean separation from her daughter, such a result is not even remotely similar to a threat that a defendant's children would be taken away from her permanently.  Indeed, defendant's reliance on Lynumn emphasizes the weakness in her claim.  Simply put, the allegation in her affidavit does not come close to the type of extreme misconduct described in Lynumn.  Moreover, it is not clear that Lynumn, decided in 1963, survives the limitations placed on the definition of voluntariness by the Supreme Court in the 1986 Connelly decision or the First Circuit's 1998 Byram decision.

Given the broad latitude granted to law enforcement officers in obtaining Mirandized confessions, there is nothing in defendant's motion that could conceivably be viewed as the type of coercive tactic that would obviate her signed consent to waive her Miranda rights.  For this reason, the Court should deny defendant's motion without a hearing.

If the Court believes that a hearing is nevertheless necessary in this case, then the government anticipates that the evidence will show that no threat or promise, implicit or otherwise, was made to the defendant prior to her Mirandized confession to federal agents on February 11, 2005.

**IV.    Conclusion**

For these reasons, the United States asks this Court to deny Defendant's Motion to Suppress statements in this case based on the papers.  The United States requests the opportunity to supplement this memorandum if the Court deems it necessary to hold an evidentiary hearing in this matter.

                                       Respectfully submitted,

                                       MICHAEL J. SULLIVAN
                                       United States Attorney

                  By:    /s/ Seth P. Berman
                         SETH P. BERMAN
                         Assistant U.S. Attorney

Dated: February 2, 2006

## ADVICE OF RIGHTS

Place: Salem MA
Date: 02/11/2005
Time: 9:20 am

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed: _Melissa M Budd (Marth)_

Witness: _[signature]_ SA/FBI Boston
Witness: _[signature]_ SA/FBI Boston
Time: 9:22 am