UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                        ) | NO.   05-10024-DPW |
| ) | |
| JESSICA BUDD              ) | |

DEFENDANT'S SENTENCING MEMORANDUM

The Defendant submits this memorandum in support of a recommendation that the court impose a sentence of "time served", which is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]...." 18 U.S.C. §3553.

Prior Proceedings

On February 3, 2005, a Federal Grand Jury sitting in Boston returned an indictment against Defendant Jessica Budd ("Budd") and a co-defendant Charles Martin ("Martin"), charging them with two counts of wire fraud [U.S.C. §1343] and two counts of mail fraud [18 U.S.C. §1341].  Budd was arrested on February 11, 2005, and brought before Magistrate Judge Dein for initial appearance and arraignment.  Budd was released on conditions.

On March 2, 2006, Budd appeared before the Court to enter a plea of guilty regarding the offenses charged.  Sentencing was continued to May 30, 2006.  Budd was released with the added conditions that she submit to drug testing and drug treatment as directed by Pretrial Services.

On April 6, 2006, Budd was brought before the Court on an arrest warrant for having violated the conditions of her release (she was terminated from the Emerson House drug treatment facility after having admitted to using drugs and failing to follow the rules).

Magistrate Judge Dein revoked Budd's release and ordered her detained, but indicated that she would "consider [a] motion in the future."

On April 26, 2006, Budd's counsel filed a motion for a hearing on release which was heard by Magistrate Dein on May 1, 2006. After hearing, Dein, M.J., denied the motion. The Defendant then filed a Motion For Revocation of The Order of Detention pursuant to 18 U.S.C. §3145 (b). The Court (Woodlock, J.) denied the motion without a hearing, noting that "the question of treatment will be taken up at the sentencing hearing."

Argument

In this case, an appropriate disposition for Defendant, in light of the purposes of sentencing outlined in 18 U.S.C. §3553, would be a sentence of "time served," with supervised release that includes participation in a drug treatment program.

A sentencing court is directed to impose a sentence which is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]", as outlined in 18 U.S.C. §3553.

The statute provides as follows: "[I]n determining the particular sentence to be imposed, [the court] shall consider:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentences and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in [the Sentencing Guidelines]....;

5. any pertinent policy statement issued by the Sentencing Commission...;

6. the need to avoid unwarranted sentencing disparities among defendants with similar records, who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense". Id.

Following the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005), the Sentencing Guidelines are merely advisory, and may be considered, along with other sentencing factors enumerated in 18 U.S.C. §3553, in the context of the overriding principle that a sentence should be "sufficient, but not greater than necessary" to fulfill the "need for the sentence imposed".

*Nature And Circumstances Of Offense*

The Defendant has pled guilty to wire fraud and mail fraud [18 U.S.C. §1341 and §1343] for her participation in the sale of a stolen radar system through the eBay website. The radar system was stolen from a boat owned by Robert Hamm and sold for $1,637.00. The alleged value of the radar was $6,800.00.

*History And Characteristics Of Defendant*

The history and characteristics of the Defendant Budd are set forth in the Presentence Report (PSR) at pages 9-15. Budd's background is noteworthy in the following respects: the Defendant at the age of 28 has absolutely no prior criminal record; she is well-educated and well-trained as a teacher, having received a B.S. in Elementary Education and Masters in Education from Salem State College, and taught in the Lynn Public School System from 1997 to 2003; she has a history of depression and use of prescribed psychiatric medications; and she has a severe drug addiction which apparently commenced when she was twenty-three with the

3

regular use of cocaine, and then progressed to Oxycontin (introduced by her husband) and in November 2005, heroin.

### *The Need For The Sentence Imposed*

The Defendant submits that a sentence of "time served" followed by three years of supervised release with a condition that she enter a drug treatment program (residential) as deemed appropriate by the Probation Office will serve the interests of justice. While it is anticipated that the Government may request that Budd be sentenced to fifteen months imprisonment (the minimum guideline term of imprisonment as calculated by Probation), further incarceration of this Defendant is not "needed" to effectuate the goals of sentencing. The Defendant's criminal conduct in this case is an anomaly. The offenses coincided with her introduction to, use of, and eventual addiction to drugs, which, in all likelihood, had a genesis in mental health problems, including depression. If her addiction is treated and cured, and her mental health issues addressed, any criminal propensity she may have will be resolved as well. The Defendant has already suffered greatly as a result of her conviction in this case. In addition, to almost two months incarceration in pretrial detention awaiting sentencing (during which she has received little or no treatment), she has, by virtue of her felony conviction, lost her opportunity to continue teaching in the public schools, for which she has been trained and educated.

### *Sentences Available*

The Defendant may be sentenced to any term of imprisonment up to a maximum of 20 years. The Defendant may also be sentenced to probation. See PSR at pages 17-18. If the

Defendant is sentenced to a term of imprisonment, the Court may also impose a term of supervised release of up to three years. See PSR at page 18.

*Advisory Guidelines*

The Probation Officer, based upon submissions and recommendations made by the Government, has computed the Total Offense Level (TOL) to be 14. The Defendant disagrees with this calculation and submits that the proper TOL is 9, computed as follows:

|   |   |   |
|---|---|---|
|   | 7 | Base Offense Level U.S.S.G. §2 B1.1 (a) |
| + | 4 | Specific Offense Characteristics U.S.S.G. §2 B1.1 (b) |
| - | 2 | Acceptance of Responsibility U.S.S.G. §3 E1.1 (a) |
|   | 9 | TOL |

The resulting guideline sentencing range is 4-10 months, which falls within Zone B of the Sentencing Table. See U.S.S.G. Ch. 5, Pt. A. Under the Guidelines the minimum term of imprisonment for Zone B Offense Levels may be satisfied by the substitution of a residential drug treatment center for the minimum term of imprisonment (either as a condition of probation or as a condition of supervised release, so long as defendant has served at least one month in prison). See U.S.S.G. §5 C1.1 (c)(2) and (3), Commentary, Application Note (3)(B) and (C).

The Government has incorrectly added 2 points to Defendant's Base Offense Level based upon stolen property recovered from a storage locker owned by co-defendant Martin. See PSR at pages 6-7. "To bring uncharged conduct into play, the government must establish a sufficient nexus between the conduct and the offense of conviction. . . The government. . . [has the] burden

to prove the nexus by a preponderance of the evidence." U.S. v. Sklar, 920 F.2d 107, 110 (1st Cir. 1990). There is no evidence connecting the items in Martin's locker to Budd, no evidence that she knew that some of the contents of the locker were stolen property, or that all the items recovered were intended to be sold over the Internet. Indeed, with respect to several items, i.e. tires and rims, that the co-defendant Martin stole from the Medina's locker, it is clear that Martin was acting on his own in attempting to "return" these items to the store. See PSR at pages 2-3. It thus cannot be concluded that co-defendant Martin's possession of stolen items in his locker was part of the same course of conduct or common scheme or plan as the offense of conviction. See U.S.S.G. §3 B1.3 (a)(1)(2) and Commentary Application Note (2).

Without the attribution to Budd of the contents of Martin's locker, the enhancement of 2 points for an offense involving over ten victims also fails. See PSR at pages 5-6. Excluding the 17 victims plus Medina (from whom the items found in Martin's locker were stolen), there are only five listed victims for whom Budd is responsible.

Finally, Probation has improperly enhanced Budd's Offense Level 2 points on the grounds that the "offense involved receiving stolen property, and the Defendant was in the business of receiving and selling stolen property." U.S.S.G. §2 B1.1 (b)(4); PSR at page 6. The offenses of wire fraud and mail fraud do not necessarily involve the receipt of stolen property because the perpetrator of the fraud may very well be the thief, not the recipient of stolen property. Nor is there evidence that co-defendant Martin "received" stolen property. In fact, the only evidence is that he was the thief, at least with respect to Medina's property. The enhancement "by its express terms, applies only if the offense involved receiving stolen property, and the defendant was a person involved in the business of receiving and selling stolen

property. Thus, on its face at least, the . . . guideline does not apply to a defendant who makes a business of stealing property; that is a 'professional thief', as distinguished from a professional fence [citation omitted]." U.S. v. McMinn, 103 F.3d 216, 219-221 (1st Cir. 1997). See also, U.S. v. Kimbrew, 406 F.3d 1149, 1152 (9th Cir. 2005)("[N]early every circuit that has addressed the meaning of this enhancement has agreed that a thief who sells goods that he himself has stolen is not in the business of receiving and selling stolen property [citation omitted]").

The Advisory Guidelines, notwithstanding the Guideline Range of 15-21 months found by Probation, provide for downward departures where "there exists...[a] mitigating circumstance...of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. §3553(a)(2), should result in a sentence different from that described". U.S. Sentencing Guidelines §5K2.0 (Policy Statement).

In this case, the offense to which the Defendant pleaded guilty, without enhancements, carries an adjusted offense level of 9 and a total offense level of 7. The guideline range, without enhancements, would be 0-6 months. Enhancements for relevant conduct, resulting in Probation's guideline range of 15-21 months, have thus become the "tail which wags the dog" of the Defendant's offense of conviction, and a downward departure may be appropriate under these circumstances. U.S. v. Lombard, 72 F.3d 170, 183-187 (1st Cir. 1995). See also United States v. Concepcion, 983 F.2d 369, 385-389 (2d Cir. 1992); U.S. v. Vizcaino, 202 F.3d 345, 347-348 (D.C. Cir. 2000).

A departure may also be appropriate in this case to sentence Defendant to "an approved residential drug treatment program" instead of further imprisonment. See U.S.S.G. §5 C1.1,

Commentary, Application Note (6). The Application Note (6) explains that a "departure . . . by substitution of a longer period of community confinement than is otherwise authorized for an equivalent number of months of imprisonment is warranted to accomplish a specific treatment purpose (e.g., substitution of twelve months in an approved residential drug treatment program for twelve months of imprisonment). Such a substitution should be considered only in cases where Defendant's criminality is related to the treatment problem to be addressed and there is a reasonable likelihood that successful completion of the treatment program will eliminate that problem."

*Policy Statements Of Sentencing Commission*

Relevant policy statements issued by the commission include U.S.S.G., Introduction, para 4(b), §5k2.0, and §5 C1.1, Commentary Application Note 6, as noted hereinabove.

*Unwarranted Sentencing Disparities*

This factor is not an issue in this case.

*Restitution*

The Probation Office has determined that restitution is due the victims in excess of $17,000.00. See PSR at page 19. Since the Defendant has no assets, she will have to satisfy any restitution order through future employment income.

Conclusion

In light of the purposes of sentencing as reflected in 18 U.S.C. §3553, this Court should sentence the Defendant to a term of "time served," to be followed by a three-year term of supervised release with a condition that she participate in a drug treatment program (including mental health treatment) as deemed appropriate by Probation. Such a sentence would be "sufficient but not greater than necessary," considering the factors enumerated in 18 U.S.C. §3553.

        DEFENDANT
        By her attorney

        /s/ John F. Palmer
        John F. Palmer
        Law Office of John F. Palmer
        24 School Street, 8th Floor
        Boston, MA 02108
        (617)723-7010
        BBO# 387980

Dated: May 26, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered parties on May 26, 2006.

        /s/John F. Palmer