UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 JUL -7  P 1:29

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA  )
                          )
v.                        )    CRIMINAL NO. 05-10024 (DPW)
                          )
CHARLES MARTIN            )

**DEFENDANT CHARLES MARTIN'S SENTENCING MEMORANDUM**

**INTRODUCTION**

On February 3, 2005, a federal Grand Jury returned an indictment charging Charles Martin with two (2) counts of Wire Fraud (18 U.S.C. s. 1343) and two (2) counts of Mail Fraud (18 U.S.C. s. 1341). On February 11, 2005, Martin was arrested while appearing at the Salem District Court in Massachusetts on charges that are factually related and legally similar to those in the instant federal indictment and was detained until February 16, 2005 at which time he was released on pre-trial conditions. On the related state charges which were subsequently dismissed, Martin had been in custody from July 29, 2004 until September 15, 2004. On February 15, 2006, approximately one year after being released from the federal court on pre-trial conditions, Martin was before the court pursuant to a pre-trial warrant and was detained in federal custody to the present day. In

the meantime, on March 2, 2006, Martin pled guilty to Counts 1 through 4 of the instant indictment.

**ARGUMENT**

Under the Supreme Court's decision in the United States v. Booker, 125 S.Ct. 738 (2005), a court must look to 18 U.S.C. s. 3553(a) and impose a sentence which is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in s. 3553(a). Booker, 125 S.Ct. at 764-765. The sentencing guidelines are no longer binding on the court. Id. In imposing a sentence, the court must consider the facts as set forth in s. 3553(a)(1)-(7).

1. Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

(s. 3553(a)(1))

As to the nature and circumstances of the offense, as stated above, Martin has pled guilty to Wire Fraud and Mail Fraud, two (2) counts each. The government alleges a loss calculation of $49,430.00. During the course of this extensive investigation, there is no evidence, nor even the slightest indication, that defendants' used violence, firearms, or threats during the course of their illegal activity.

2

As to the history and characteristics of Martin, the defense relies upon the Presentence Report (hereinafter "PSR") dated May 17, 2006 and authored by U.S. Probation Officer Tricia Marcy. Born on December 16, 1971 in Lynn, Massachusetts, Martin describes his "working class" upbringing as normal. His father was a heavy drinker which may have some casual connection to Martin's drug dependence. Martin still enjoys close family ties to his parents as well as his sisters, particularly his oldest sister Elizabeth Gagne who has spoken favorably about him to the Probation Department.

In 1999, Martin became seriously involved with the co-defendant Jessica Budd. They met when they were both copping drugs from the same dealer. This is a humiliating fact for Martin to admit, but he thinks that it is a strong indication of how his drug addiction permeated almost every aspect of his life. While the co-defendant is currently detained at MCI-Framingham, the two have a good relationship and both look forward to a bright future together, free from drugs and free from the resulting chaos.

Although he has no biological children of his own, Martin has become a *de facto* father for the co-defendant's daughter from a prior relationship. He lives with and

3

supports young Victoria Budd and is quite concerned about, and involved in, her upbringing. For example, on birthdays and on Christmas, it is not unusual for Martin to not only provide gifts for Victoria from himself, but also to provide gifts labeled as though they were from her biological father, so that Victoria does not feel abandoned or forgotten by her biological father.

As to his education and employment record, although it is true that academics had never been Martin's forte he did obtain his GED while living in Florida. Moreover, he continued his education and received a certificate in marine mechanics while in Florida. Most of his learned skills have been in the area of auto mechanics and carpentry. These trades have caused him to remain gainfully employed since leaving school except for a six (6) month period around the year 2002.

Concerning his history with the criminal justice system, it is noteworthy that Martin has only one (1) criminal history point charged against him resulting from a 1992 offense of receiving stolen property (a cellular telephone) which was resolved in the year 2000 by means of a guilty finding and a $150.00 fine. Interestingly, had this matter been resolved promptly in

4

1992, Martin would not have been charged with the resulting criminal history point.

It is doubtless that the illegal use of drugs has caused Martin to be where he is today: detained while awaiting sentencing. Since 1997, he has suffered from the bane of our society - drug addiction. He and his wife fueled each others drug appetite to the point where he states that they "would share approximately 15 80 mg oxycontin tablets each day." See PSR ¶ 73. Although he was able to maintain sobriety for approximately six (6) months, the allure and grip of the opiates was too great and he relapsed while out on pre-trial release, sniffing two (2) to three (3) 80 mg oxycontin tablets per day.

2. <u>The Need for the Sentence to "Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense"</u>

<u>(s. 3553(a)(2)(A))</u>.

The requested sentence of time served which would reflect approximately eight (8) months incarceration (the sum of his time awaiting trial on related state charges and the time spent detained on the federal indictments) followed by three (3) years of supervised release with a condition that he enter a drug treatment program, as deemed appropriate by the Probation Department, would serve the

interests of justice, reflect the seriousness of his offense, and punish him with incarceration. The proffered punishment would be the first sentence of incarceration for this thirty-four year old gentleman. Coupled with supervised release, the disposition would be deemed just and demonstrate respect for the law.

    3.    <u>The Need for the Sentence "To Afford Adequate Deterrence to Criminal Conduct" and "To Protect the Public from Further Crimes of the Defendant"</u>

(s. 3553(a)(2)(B)&(C)

The requested sentence which includes incarceration and supervised release provides a strong deterrence for this drug addicted family man.

As to the need for the sentence to "protect the public from further crimes of the defendant," the best way to protect the public is to afford Martin the substance abuse and other treatments he needs and desires. Martin stands at the precipice of his life: future criminal cases will devastate him financially, cause him to lose his business, and most significantly, cause the wreckage of his family. Every indication is that the sooner he can get help through drug treatment programs while on supervised release, the more successful he will be in rehabilitating himself and return to being a productive member of society.

    4.   <u>The Need "To Provide the Defendant with Needed Education Vocational Training, Medical Care, and Other Correctional Treatment in the Most Respective Manner"</u>

<u>(s. 3553 (a)(2)(D))</u>.

Please see the discussion in the section immediately preceding the instant section.

    5.   <u>The "Kinds of Sentences Available," the "Kinds of Sentences and Sentencing Range Established by the Guidelines," and "Any Pertinent Policy Statement"</u>

<u>(s. 3553 (a)(3),(4),&(5))</u>.

The proposed sentence of time served with supervised release is available to the court. As to the Advisory Sentencing Guidelines, the Probation Department's guideline calculation with regards to the offense can be found at ¶'s 16 through 30 of the PSR and is as follows:

- Base Offense Level U.S.S.G. s. 2 B1.1(a):     7 points

- Specific Offense Characteristic
  U.S.S.G. s. 2 B1.1(b)(1)(loss of more than
  $30,000.00 but less than $70,000.00):     6 points

- Specific Offense Characteristic
  U.S.S.G. s.  2 B1.1(b)(2)(A)(more than ten
  (10) but less than fifty (50) victims):     2 points

- Specific Offense Characteristic
  U.S.S.G. s. 2 B1.1(b)(4)(business of receiving
  And selling stolen property):     2 points

7

As calculated by the Probation Department, the Total Offense Level (TOL) is seventeen (17).

The defense disputes the two (2) additional points resulting from Martin allegedly being in the "business of receiving and selling stolen property" since the evidence supporting the claim, particularly the evidence surrounding the contraband in the Martin locker, demonstrates that he "stole" instead of "received" the property.

Additionally, the defense vigorously disputes the claim that Martin is not entitled to a reduction based on his acceptance of responsibility under U.S.S.G. s. 3 B 1.1(a). The defense will address this issue further at sentencing.

Consequently, the defense claims that the Total Offense Level is thirteen (13) which, when coupled with criminal history category calculation of I yields a guideline range of twelve (12) to eighteen (18) months.

Yet, the Advisory Sentencing Guidelines provide for mitigation (f/k/a downward departures) where "there exists. . .[a] mitigating circumstances. . . of a kind or to a degree, not adequately taken into consideration by the sentencing commission formulating the guidelines that, in order to advance the objections set forth in 18 U.S.C. s. 3553(a)(2) should result in the sentence difference from

that described. U.S.S.G. s. 5 K2.0 policy statement). Mitigation is appropriate in this case to sentence Martin to an approved drug treatment program instead of furthering incarceration. See U.S.S.G. s. 5 C1.1, Commentary, Application Note (6).

6. <u>The "Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct"</u>

(s. 3553(a)(6))

A sentence of time served for Martin would avoid unwarranted sentencing disparities between him and his co-defendant and wife, Jessica Budd. While each would receive a sentence of "time served" the period of incarceration for Martin would be greater than the incarceration for the defendant Budd which, if it is suggested that they be treated not exactly similarly because of the difference in the value of loss attributed to each, arguably would be proportionate to their respective culpabilities.

> Respectfully Submitted,
> By the Attorney,
>
> __/s/ James J. Coviello__
> James J. Coviello
> 33 Third Avenue
> Charlestown Navy Yard
> Boston, MA  02129
> Tel: (617) 242-6832
> Fax: (617) 242-4409
> BBO #550949

Dated: _____
Crim-Martin,Charles-SentMemorandum3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | DOCKET NO. 05-10024 (DPW) |
| | ) | |
| V. | ) | |
| | ) | |
| CHARLES MARTIN | ) | |

**CERTIFICATE OF SERVICE**

I, James J. Coviello, Esquire hereby certify that on this date, I have served to AUSA Seth Berman the following with regard to U.S.A. v. Charles Martin, Criminal No. 05-10024 (DPW):

1. Defendant Charles Martin's Sentencing Memorandum.

( ) First Class Mail, Postage Prepaid

(X) In-Hand Delivery

( ) Facsimile

James J. Coviello
33 Third Avenue
Charlestown Navy Yard
Boston, MA 02129
Tel: (617) 242-6832
Fax: (617) 242-4409
BBO No. 550949

Dated: 7/7/06

JJC:kmm
Crim,Martin,Chas-Cert Service